### CONNER v. McAFEE.    (No. 1995.)*

(Court of Civil Appeals of Texas. Amarillo. June 14, 1922. Rehearing Denied Oct. 11, 1922.)

1. Appeal and error ⟨⟩664(1)—Court's qualification in conflict with bill of exceptions controls.

Where a qualification in the bill of exceptions by the trial court contradicted statement of plaintiff's counsel in bill, the facts stated in the qualification will control.

2. Vendor and purchaser ⟨⟩307—Party who first violates contract cannot maintain action against other for failure to perform.

In an action for notes alleged to have been executed for the purchase of land, which plaintiff had induced defendant to execute to the grantor, and which he subsequently acquired, upon the promise to hold defendant harmless from any obligation thereon by either selling the land before certain vendor's lien notes thereon became due, or failing, by accepting defendant's deed for the land and surrendering his notes, plaintiff, who upon his failure to sell the land refused to protect defendant at the foreclosure suit of vendor's lien notes, breached the contract prior to the conveyance of the land by defendant for the benefit of plaintiff, and was not entitled to recover on the notes.

Appeal from District Court, Randall County; Henry S. Bishop, Judge.

Action by J M. Conner against C. R. McAfee. Judgment for defendant, and plaintiff appeals. Affirmed. See, also, 214 S. W. 646.

B. Frank Buie and W. H. Russell, both of Hereford, and Rector L. Lester, of Canyon, for appellant.

A. S. Rollins, of Dallas, and W. J. Flesher, of Canyon, for appellee.

HALL, J. The appellant, Conner, sued the appellee, McAfee, in the district court of Randall county, to recover the amount alleged to be due upon three promissory notes in the sum of $1,178.71 each, executed by appellee and payable to one Geo. M. Eckert, dated September 20, 1911, and due one, two, and three years from date, respectively, stipulating for interest at the rate of 7 per cent. and with the usual provision for 10 per cent. attorney's fees. It is alleged that the notes were given in part payment for a certain section of land in Randall county. Note No. 1 was barred by the statute of limitations, and the prayer is for judgment upon the last two notes. The substance of appellee McAfee's answer is: That the appellant requested him, by way of accommodation, to execute the notes sued upon, agreeing at that time that the appellant would protect appellee against liability upon the said notes. That at the time of the execution of the notes in suit it was understood that there were prior vendor's lien notes outstanding against the land, and it was agreed between appellant and appellee that if the latter would accept a deed to said land from Eckert and execute the notes in suit appellant would, before any of said prior notes became due, find a purchaser for said land for a price sufficient to take care of the first lien notes and the notes herein sued upon. That at the time of the transaction both parties knew that the first series of vendor's lien notes had been placed with L. T. Lester as collateral security to an obligation then due the said Lester, and in order to induce the appellee to execute the notes sued on the appellant represented to appellee that if the land had not been sold when the first one of the outstanding first lien notes became due he would pay off said note and accept from defendant a deed to said section of land and surrender to the defendant the note sued on. He represented that he would be able to sell said land in ample time to take care of the notes, and would do so. He further represented to appellee that he was solvent and was able to pay off said first lien notes when they matured, and that he would do so. That appellee relied upon said representations, and executed the notes in suit and but

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 22, 1922.

for said representations would not have executed them. He alleges in substance that while the purchase was made from Eckert and the notes executed to him, it was understood that the notes would be transferred to the appellant, which has been done. That the appellant did not pay either of the first lien notes against the land, nor did he sell the land, and refuses to return the notes herein sued upon, as he had agreed to do. That L. T. Lester, in adjusting an obligation due him, acquired the title to the first lien notes, and filed suit against the appellee and Geo. M. Eckert, together with the plaintiff, to foreclose the first lien against the land. That although said cause was not tried and was not reduced to judgment until more than six months after said suit was filed the plaintiff made no effort to sell the land or to pay off the first lien notes, but permitted default judgment to be entered against him, and although the appellee requested appellant to be present at the sheriff's sale and by bidding to protect the first lien notes, and thus substantially carry out the agreement, appellant refused to attend the sale, and refused to have anything to do with the land, and stated to appellee that he had waived any rights he had under the agreement hereinbefore set out. That he would have nothing further to do with the matter, and was not financially able to perform his obligations, and therefore would release appellee from any liability that the appellant refused to accept a deed from appellee, declining to have anything further to do with the matter.

The appellant replied to this answer by supplemental petition, consisting of general demurrer and several special exceptions. He pleaded specially that appellee was estopped from denying that he purchased the said section of land as his own property, and asserting that he did not assume as his debt the two original vendor's lien notes, dated December 1, 1907, due on or before four and five years, respectively; that he is estopped from denying that he executed the notes sued on in this case as principal, as he went into actual peaceable possession of the premises, and had the use, benefit, and rent of the land from September 20, 1911, to January 7, 1913, when it was sold under order of court to satisfy the judgment upon the two original notes, and because on March 22, 1912, the appellee transferred said notes 4 and 5 to L. T. Lester, and guaranteed to Lester the payment of said notes on or before April 1, 1912, and thereafter, on March 23, 1912, sold, transferred, and conveyed said section of land to one Almer McAfee, subject to the two original notes and the three notes sued on, thus putting it out of his power to act as trustee of the plaintiff, and after he had so conveyed said land, and after Lester had filed suit to foreclose the original vendor's lien, the appellee refused to sell the land, and refused to permit appellant to sell the same. By supplemental answer the appellee alleged that all of the matters set up by appellant and relied upon as an estoppel occurred long after appellant had breached his contract by refusing to pay off the original vendor's lien notes at their maturity; that the deed to Almer McAfee was executed for the purpose of assisting appellant in securing a continuance of the foreclosure suit, in order that appellant might have additional time in which to make arrangements to protect himself, and that Almer McAfee never claimed or asserted any interest in the land, but, on the contrary, at all times held the same as trustee for plaintiff, and at all times stood ready to convey the same to plaintiff upon his complying with the terms of his agreement.

The case was submitted to a jury upon four special issues, and the findings are as follows:

"No. 1. There was an agreement made on September 20, 1911, and prior to the execution of the two notes for $1,178.71 each, sued on herein, between plaintiff, J. M. Conner, and defendant, C. R. McAfee, to the effect that McAfee was to execute and deliver to Geo. M. Eckert three promissory notes for $1,178.71 each, and that Conner would guarantee or protect McAfee from liability on said notes.

"No. 2. That plaintiff, J. M. Conner, and defendant, C. R. McAfee, on September 20, 1911, and prior to the execution of the notes sued on herein, made an agreement to the effect that section 57, block K–14, had not been sold when the two vendor's lien notes for $1,356 each, on said land, became due, Conner would pay off said last-named notes and accept from McAfee a deed to said land, and surrender to McAfee the three notes for $1,178.71 each, executed to Geo. M. Eckert.

"No. 3. It was understood and agreed by and between plaintiff, J. M. Conner, and defendant, C. R. McAfee, prior to the execution of the notes of C. R. McAfee to Geo. M. Eckert, for $1,178.71 each, sued on herein, that said notes, when executed, were to be transferred by Eckert to Conner.

"No. 4. That plaintiff, Conner, on September 20, 1911, agreed with the defendant that if defendant, C. R. McAfee, would execute the said notes for $1,178.71 each, sued on herein, he (Conner) would not hold McAfee personally liable thereon."

No issue was submitted to the jury inquiring as to the purpose which the appellee had in conveying the land to Almer McAfee. It must therefore be presumed that the court found that the conveyance was made for the benefit of the appellant, and that Almer McAfee asserted no title to the land. The first one of the prior vendor's lien notes, in the sum of $1,356, became due December 1, 1911. The appellant never paid or offered to pay either of the notes. This is clearly a breach of the contract on his part. In November, 1912, these notes were reduced to judgment, the

lien was foreclosed, and the land sold under order of sale. Most of the propositions urged here were considered in our former opinion in this case, reported in (Tex. Civ. App.) 214 S. W. 646.

[1] By the first three propositions the appellant attacks the action of the trial judge in permitting appellee to open and close in the argument of the case. A bill of exceptions was prepared, and was approved by the trial judge, with such qualification as to render the bill itself worthless. It appears from the qualification that prior to the introduction of any evidence the defendant's counsel stated in open court that because of the fact that defendant in his pleading had admitted the execution of the notes sued on he would have the right, and would insist upon the right, to open and close, to which plaintiff's counsel objected. The trial judge then stated that he was not certain who was correct on the point, and after some discussion between counsel for both parties and the court, Judge B. Frank Buie, leading counsel for the appellant, stated that he did not want to take any chances on a reversal by having the court deny defendant the right to open and close, which would be in effect an assent to the proceeding. The court further states:

"I did not hear plaintiff's counsel say anything about excepting, and did not then understand that they were excepting, or intending to except, to the court's action in permitting the defendant to open and close the argument."

[2] Since the court's qualification will control where it conflicts with the recital in the bill, the result is that appellant is here practically without any bill of exception upon which to base his assignment. Under the pleadings and evidence, the court did not err in refusing to direct a verdict for the appellant.

The fifth proposition is:

"Where the maker of notes, McAfee, pleads as a defense that before the execution of said notes, September 20, 1911, he had an agreement with the holder of said notes to hold him harmless thereon in either of two ways, i. e., to either sell the land and take up the notes or to purchase the land and pay a first lien and surrender the accommodation notes, and where it is conclusively shown by the admissions of the maker of the notes that thereafter, on March 23, 1912, the said maker and trustee voluntarily conveyed said land subject to the notes he had executed, thereby acknowledging said notes and debt by an instrument in writing, it is error for the trial court to fail to instruct the jury to return a verdict for the holder of the said notes."

This proposition cannot be sustained for two reasons: As hereinbefore stated, there is an implied finding by the court that the act of McAfee in conveying the land to Almer McAfee was for the benefit of appellant. We cannot therefore assume, especially in the absence of any proof, that such conveyance was an affirmance of the contract. A further reason is that Conner had breached the contract prior to the date of this conveyance by refusing to pay off the two original vendor's lien notes held by Lester, and by permitting suit to be instituted upon them, and the land sold under the judgment foreclosing the lien. The effect of the judgment is, when construed with the findings, that the notes in suit were accommodation paper, executed without consideration; that the express agreement upon which said notes were executed and delivered to Connor had been breached by him. Under these circumstances the judgment should be affirmed. Loudenback v. Tenn., etc., Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 407. In that case the rule is expressed thus:

"If there is anything well settled it is that the party who commits the first breach of the contract cannot maintain an action against the other for subsequent failure to perform. The plaintiff has not kept the contract, and shows no excuse for his breach. It does not, therefore, show any such performance on its own part as to entitle it to demand that the defendant shall go on and perform, or pay damages for a subsequent refusal to recognize the contract as in force."

The sixth proposition is disposed of by what has been heretofore said.

The appellant advances several other propositions in his brief, but there is no statement from the record and no argument insisting upon them, and he must be held to have abandoned them.

Finding no reversible error, the judgment is affirmed.